**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JUNE O. CARLSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07 C 06 |
| | ) |
| SCOTT BUKOVIC and the CITY OF DARIEN, | ) Judge Nan R. Nolan |
| an Illinois Municipal Corporation, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff June O. Carlson has charged Officer Scott Bukovic with unreasonable seizure in violation of 42 U.S.C. § 1983. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and are set to proceed to trial on June 15, 2009. Currently before the court are Officer Bukovic's motions *in limine* and motion to bar expert opinions from Ms. Carlson's treating physicians. For the reasons set forth below, the motions *in limine* and motion to bar are granted in part and denied in part.

**DISCUSSION**

**A.  Motions *in Limine***

A motion *in limine* is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). *See also American Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1463 (7th Cir. 1996) ("A motion in limine is a useful device for trying to exclude evidence before trial in order to prevent the trial from being interrupted by wrangles over admissibility or the jury from getting a whiff of prejudicial evidence that may in fact be inadmissible.") District courts have broad discretion in ruling on motions *in limine*, but evidence should not be excluded before trial unless it is clearly inadmissible on all potential grounds. *Kiswani v. Phoenix Sec. Agency, Inc.*, 247 F.R.D. 554, 557

(N.D. Ill. 2008). Otherwise, rulings should be deferred until trial so questions of foundation, competency, relevancy, and potential prejudice may be resolved in proper context. *Id.*

A court's decision to deny a motion *in limine* does not mean that all evidence contemplated by the motion will be admitted at trial. "Rather, denial means the court cannot determine whether the evidence should be excluded outside the trial context.'" *McClain v. Anchor Packing Co.*, No. 89 C 6226, 1996 WL 164385, at *2 (N.D. Ill. Apr. 3, 1996) (quoting *Wolfe v. Howmedica, Inc.*, No. 94 C 4117, 1996 WL 10901, at *2 (N.D. Ill. Jan. 10, 1996)). Accordingly, "[t]rial judges may alter prior '*in limine* rulings, within the bounds of sound judicial discretion.'" *Kiswani*, 247 F.R.D. at 557 (quoting *Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003)).

Officer Bukovic has filed 13 motions *in limine*, seven of which are contested. The court addresses all of the motions below.

**1.** **<u>Unopposed Motions</u>**

Ms. Carlson does not object to Officer Bukovic's motions *in limine* regarding witnesses, insurance, indemnification, settlements and *Monell* claims. Thus, motions *in limine* 1-6 are granted as follows:

(1) non-party witnesses who will testify in this case will be excluded from the courtroom until they are called to testify;

(2) Ms. Carlson will not make any reference to the City of Darien's insurance, FED. R. EVID. 411;

(3) any witnesses not disclosed pursuant to FED. R. CIV. P. 26 and 37 are excluded from testifying;

(4) any evidence of indemnification is excluded, *see Delgado v. Mak*, No. 06 C 3757, 2008 WL 4367458, at *3 (N.D. Ill. Mar. 31, 2008) (quoting *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998)) ("In the general case courts exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award because it knows the government - not the individual defendants - is footing the bill.");

(5) all evidence of settlement negotiations between the parties, including Paul Carlson and Wal-Mart, is excluded; and

(6) all evidence regarding the policies, practices, customs and procedures of the City of Darien and/or the Darien Police Department is excluded. In addition, Ms. Carlson may not inquire into whether Officer Bukovic received prior citizen complaints or internal discipline, or has ever been sued for any alleged violations of someone's civil rights. FED. R. EVID. 404(b); *Carr v. City of Chicago*, 911 F.2d 736 (Table) (7th Cir. 1990).

## 2. <u>Disputed Motions</u>

The parties dispute the remaining motions *in limine* 7-13.

### a. Evidence Surrounding Defendant's Departure from Darien Police Force

In July 2005, several months after the January 2005 incident involving Ms. Carlson, Officer Bukovic decided to leave the Darien Police Department and continue his law enforcement career at another department. Officer Bukovic argues that the reasons for this personal decision are unrelated to this lawsuit, and substantially more prejudicial than probative. Ms. Carlson questions the truth of Officer Bukovic's stated reason for leaving the department, but offers absolutely nothing to suggest that it was in any way related to the incident with her on January 3, 2005. The court agrees that the evidence of Officer Bukovic's departure is substantially more prejudicial than probative, and the motion *in limine* to bar this information is granted. FED. R. EVID. 403; *Thompson v. City of Chicago*, 472 F.3d 444, 456 (7th Cir. 2006) ("Evidence is considered unfairly prejudicial, not merely because it damages the opposing party's case, but also because its admission makes it likely that the jury will be induced to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented.") (internal quotations omitted).

### b. Elevation of Plaintiff's Blood Pressure

Ms. Carlson's medical records reflect that she experienced elevated blood pressure following the incident with Officer Bukovic. Officer Bukovic seeks to exclude this evidence as purely speculative and irrelevant to the issues of liability or damages. There is no evidence, for example, that Ms. Carlson suffered any medical conditions directly related to this temporary rise in blood pressure. Ms. Carlson does not dispute this fact, but argues that "[e]vidence of significantly

3

elevated blood pressure is probative and/or corroborative . . . of a traumatic event occurring." In Ms. Carlson's view, this evidence tends to support her version of the encounter with Officer Bukovic, and is also relevant to her claim of emotional anguish damages.

The problem with Ms. Carlson's argument is that she has not identified a medical expert who can testify that the slight elevation in blood pressure observed several hours after her encounter with Officer Bukovic was in fact related to that encounter, as opposed to some other cause. Ms. Carlson may testify during the damages phase of the trial that she experienced emotional distress as a result of Officer Bukovic's actions, and she may describe how she felt. She may not, however, mention an elevation in her blood pressure. This motion *in limine* is granted.

### c. Lawfulness of Plaintiff's Presence on Wal-Mart Premises

Testimony in this case indicates that Wal-Mart's store manager told Officer Bukovic that she wanted Ms. Carlson escorted out of the store. Ms. Carlson refused to leave and maintains that she had a right to stay in the store even when asked to leave because she was not committing a criminal trespass. Under Illinois law, a criminal trespass occurs when a person, among other things, (1) "knowingly and without lawful authority enters or remains within or on a building;" or . . . (3) "remains upon the land of another, after receiving notice from the owner or occupant to depart." 720 ILCS 5/21-3(a)(1) and (3). For purposes of subsection (1), there is no criminal trespass where a person is "in a building which is open to the public while the building is open to the public during its normal hours of operation." *Id*. Ms. Carlson insists that she was on Wal-Mart's premises lawfully under subsection (1) and, thus, Officer Bukovic had no authority to try and physically escort her from the premises. Officer Bukovic focuses on subsection (3), which governs a person's right to remain on land after being asked by the owner to leave. Ms. Carlson says, without any supporting citation, that a Wal-Mart "building" is not "land" under this subsection.

This dispute goes to the issue of the reasonableness of any alleged "seizure" of Ms. Carlson. Ms. Carlson has suggested that only three factors are relevant in making a

4

reasonableness determination: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether she is actively resisting arrest or attempting to evade arrest by flight. This list, however, is not exhaustive. Rather, "[w]hether the force used to effect a seizure is excessive depends on the totality of circumstances under an objective reasonableness standard. The question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Marion v. City of Corydon, Indiana*, 559 F.3d 700, 705 (7th Cir. 2009) (internal quotations and citations omitted). "Importantly, all of these facts and circumstances 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The court is concerned that injecting the issue of criminal trespass will mislead and confuse the jury and lead to unfair prejudice. *Thompson*, 472 F.3d at 456 ("Rule 403 provides a district court with discretion to exclude evidence where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.") Specifically, the jury should not get sidetracked with a dispute as to whether Ms. Carlson violated the Illinois criminal trespass statute, which is not an allegation in this case. This is especially true because Ms. Carlson's parsing of the statute to insist that Officer Bukovic should have known that being asked to leave "land" is not the same as being asked to leave a "building" arguably is not reasonable, particularly where he was faced with an evolving situation. *Graham*, 490 U.S. at 396-97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.")

Contrary to Ms. Carlson's suggestion, an actual criminal violation is not necessary to justify a seizure by Officer Bukovic. Rather, the relevant issue is the reasonableness of Officer Bukovic's

5

actions and beliefs given the situation unfolding in front of him – even if his beliefs ultimately prove incorrect. *See, e.g., Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007) ("The reasonableness of [a] seizure turns on what the officer knew, not whether he knew the truth or whether he should have known more.")

It is for the jury to decide whether Ms. Carlson refused to leave the Wal-Mart store even after the manager asked Officer Bukovic to escort her out; and whether Officer Bukovic acted reasonably in attempting to secure Ms. Carlson's cooperation. Ms. Carlson has no legal claim that Wal-Mart was somehow required to let her stay on the premises, and she may not argue that she was legally entitled to remain at Wal-Mart after being asked to leave. Nor may she make any reference to the criminal trespass (or any other criminal) statute, or argue generally that she was not committing a crime. Indeed, it is undisputed that Officer Bukovic never charged Ms. Carlson with committing any crime. Ms. Carlson may argue only that she did not want to leave and that she did not believe she was trespassing because the store was open to the public; she was there during normal business hours; and she was not creating a disturbance. Officer Bukovic, in turn, may argue that he believed Ms. Carlson was trespassing because the store owner wanted her to leave; she refused his order to leave; and she was behaving in a disruptive manner.

### d. Plaintiff's Citizen's Complaint to Hinsdale Police Department

Following the incident at Wal-Mart, Plaintiff contacted the Hinsdale Police Department to make a citizen's complaint against Officer Bukovic. Officer Bukovic argues that evidence of this complaint is irrelevant because he was a Darien police officer and the Hinsdale police told Ms. Carlson that they could not take her report. Ms. Carlson argues that she should be allowed to testify to the fact that she lodged a timely complaint, and relate the contents of that complaint to the jury.

The fact that Ms. Carlson attempted to file a complaint with the Hinsdale Police Department is not relevant to the issue of whether Officer Bukovic "seized" her or used excessive force against

her. The alleged contents of that complaint are similarly not probative because the department never took her statement or prepared a written report. The motion *in limine* to bar evidence of Ms. Carlson's citizen's complaint to the Hinsdale Police Department is granted in its entirety.

### e. Plaintiff's Citizen's Complaint to Darien Police Department

In addition to the Hinsdale complaint, Ms. Carlson also filed a citizen's complaint against Officer Bukovic with the Darien Police Department. The department conducted an investigation, but due to Ms. Carlson's refusal and/or inability to cooperate, the complaint was deemed unfounded. Officer Bukovic argues that evidence of this complaint and investigation is irrelevant to whether he seized or used excessive force against Ms. Carlson. Ms. Carlson does not object to this motion as long as (1) she is allowed to testify to the fact that she made a prompt complaint and describe the substance of that complaint; and (2) she may introduce evidence showing the relationship between the investigation and Officer Bukovic's departure from the Darien Police Department.

Once again, the fact that Ms. Carlson lodged a complaint with the Darien Police Department is not relevant to the issue of whether Officer Bukovic "seized" her or used excessive force against her. Notably, the telephone report provides no details regarding what allegedly occurred, and Ms. Carlson never followed up on the complaint. As explained earlier, moreover, the reasons behind Officer Bukovic's departure from the Darien Police Department are not relevant to this case. Thus, Ms. Carlson may not introduce evidence showing the alleged relationship between the investigation and Officer Bukovic's departure. This motion *in limine* is granted.

### f. Alleged Violations of Department Policies

Officer Bukovic next seeks to preclude evidence as to whether he violated Darien Police Department rules or policies, or deviated from his training procedures. Officer Bukovic directs the court to *Thompson v. City of Chicago*, where the Seventh Circuit found that a general order of the Chicago Police Department "sheds no light on what may or may not be considered 'objectively

reasonable' under the Fourth Amendment given the infinite set of disparate circumstances which officers might encounter." 472 F.3d at 454. Ms. Carlson agrees with this general proposition, but argues that "order[s], policies and procedures that have **specific** application to the facts at hand are relevant." (Pl. Resp., at 5 (emphasis in original).) The court disagrees.

The Seventh Circuit "has consistently held that '42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.'" *Thompson*, 472 F.3d at 454 (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)). "In other words, the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Id*. Officer Bukovic's motion *in limine* to bar evidence of alleged violations of Darien Police Department policies, rules or procedures is granted.

### g. Defendant's Touching of Service Weapon

Ms. Carlson's son, Paul, claims that during the encounter on January 3, 2005, Officer Bukovic placed his hand on his service weapon in an apparent show of force. Officer Bukovic contends that this alleged show of force is irrelevant and prejudicial because it was not directed at Ms. Carlson, who is the only plaintiff in this case. Ms. Carlson insists that the action "is probative of Defendant's willingness to consider the use of excessive force in a non-criminal context." (Pl. Resp., at 5.) It is worth reiterating here that neither Ms. Carlson nor Paul will be permitted to testify regarding any criminal statutes, nor can they argue generally that they were not committing any crimes.

As for the evidence at issue, the court agrees with Officer Bukovic that his alleged show of force does not in any way constitute a seizure of Ms. Carlson. To the contrary, Ms. Carlson did not see Officer Bukovic's alleged action and it was unconnected to her physical contact with him. *See California v. Hodari D.*, 499 U.S. 621, 626-27 (1991) (no seizure if officer's show of force does not either physically touch the individual or compel her to submit to the officer's authority). In fact, it

appears that Paul's observation occurred <u>after</u> the physical encounter with Ms. Carlson had ended. *See Carlson v. Bukovic*, No. 07 C 06, 2008 WL 2397682, at *5 (N.D. Ill. June 9, 2008) (citing testimony that Paul reported seeing Officer Bukovic place his hand on his service revolver after the physical encounter with Ms. Carlson had ended and Paul was pouring her some water with the officer's permission). In addition, there is no claim that Officer Bukovic unholstered or used his service weapon at any time.

If the evidence establishes that Paul saw Officer Bukovic touch his service weapon after the physical encounter with Ms. Carlson, then it is not relevant to whether he seized her or used excessive force against her during the encounter, and is substantially more prejudicial than probative. *Thompson*, 472 F.3d at 456 ("Evidence is considered unfairly prejudicial, not merely because it damages the opposing party's case, but also because its admission makes it likely that the jury will be induced to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented.") (internal quotations omitted). If, on the other hand, the evidence establishes that Paul saw Officer Bukovic touch his service weapon before or during the physical encounter with Ms. Carlson, then Paul may testify as to what he saw. The court will then issue an appropriate limiting instruction to the effect that touching a service weapon is not evidence of a seizure.

**B.    Motion to Bar Expert Testimony**

Ms. Carlson has identified four treating physicians as witnesses in this case: (1) Dr. Lisa Fortman; (2) Dr. Brian Kern; (3) Dr. Gene Harvey; and (4) Dr. Robert Trefil. Ms. Carlson has at all times maintained that she does not intend to elicit any expert testimony from these doctors and, consistent with this representation, she has not submitted any corresponding expert reports under Rule 26(a)(2). The parties agree that these treating physicians are allowed to offer testimony regarding their observations of Ms. Carlson and whether their observations were consistent with Ms. Carlson's representations. The parties also agree that the doctors cannot offer any testimony

or opinions as to Ms. Carlson's prognosis or any future disability. (Pl. Resp., at 4.) This portion of the motion to bar is granted. The only issue left to be decided, therefore, is whether the four treating physicians will be allowed to provide testimony or opinions regarding the cause of Ms. Carlson's conditions.

Ms. Carlson contends, without any supporting citation, that causation testimony does not constitute expert testimony requiring a Rule 26(a)(2) expert report because it goes to the issue of whether the physicians' observations were consistent with her statements to them. The court has found a split of opinion on this issue. *Compare McCloughan v. City of Springfield*, 208 F.R.D. 236, 241-42 (C.D. Ill. 2002) (collecting cases) (treating physicians may offer opinion testimony on causation without submitting a Rule 26(a)(2)(B) report), *with Krischel v. Hennessy*, 533 F. Supp. 2d 790, 795 (N.D. Ill. 2008) ("[W]hen the testimony of a treating physician goes beyond the scope of treatment, observation, and diagnosis, and includes opinions on causation . . ., the treating physician must provide a report" pursuant to Rule 26(a)(2)(B)).

Putting the report issue to one side, it is clear that any causation testimony offered by a treating physician must satisfy the requirements of Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See Fuesting v. Zimmer, Inc.*, 594 F. Supp. 2d 1043, 1045 (C.D. Ill. 2009). Rule 702 allows an expert to offer an opinion "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. *See also Boim v. Holy Land Found. for Relief and Development*, 549 F.3d 685, 726 (7th Cir. 2008). In *Daubert*, the Supreme Court held that courts must "serve as gatekeepers so that unreliable expert testimony does not carry too much weight with the jury." *United States v. Ozuna*, 561 F.3d 728, 737 (7th Cir. 2009). The objective of *Daubert* is to ensure that "an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The party seeking to present expert testimony bears the burden of demonstrating that it meets the requirements of Rule 702 and *Daubert*. *Fuesting*, 594 F. Supp. 2d at 1045; *Krischel*, 533 F. Supp. 2d at 797.

With these parameters in mind, the court considers the prospective causation testimony of each of the four treating physicians.

### 1. Dr. Fortman

Ms. Carlson concedes that Dr. Fortman will not be called to offer any opinions on the issue of causation. The motion to bar such testimony is granted.

### 2. Dr. Kern and Dr. Harvey

Dr. Kern is the Hinsdale Hospital emergency room physician who treated Ms. Carlson on the evening of her encounter with Officer Bukovic. Dr. Kern does not recall whether he ever treated or saw Ms. Carlson before or after January 3, 2005, and he has no personal knowledge as to what transpired between Ms. Carlson and Officer Bukovic. (Kern Dep., at 5.) Dr. Harvey is a family practice physician who treated Ms. Carlson from January 6, 2005 until he retired in April 2005. Dr. Harvey similarly has no personal knowledge regarding Ms. Carlson's encounter with Officer Bukovic, or her medical history prior to January 6, 2005.

Ms. Carlson represents that Dr. Kern and Dr. Harvey will be called upon to testify only that the injuries they observed were consistent with her claimed version of events. This testimony will be allowed. The physicians may not, however, offer any opinions suggesting that the injuries were in fact "caused" by Officer Bukovic or his alleged actions. Dr. Harvey further may not testify as to how older individuals may react when subjected to a trauma, or opine that Ms. Carlson's pre-existing conditions "flared up" because of the incident with Officer Bukovic. Dr. Harvey testified at his deposition that it "would not be unusual" for a pre-existing condition to "flare up," which is opinion testimony not based upon personal observation.

### 3. Dr. Trefil

Dr. Trefil is Ms. Carlson's treating dentist. Dr. Trefil is expected to testify that he fitted Ms. Carlson for partial dentures in 1996, and that when he saw her on April 15, 2005, they were no longer fitting properly. Ms. Carlson reportedly told Dr. Trefil that she had not worn her partials since the incident with Officer Bukovic. Ms. Carlson concedes that Dr. Trefil cannot offer an opinion as to whether the incident with Officer Bukovic caused her to stop wearing her dentures. Rather, he would testify only to the general proposition that failing to wear dentures for a period of time may cause teeth to shift. Of course, such testimony does not reflect Dr. Trefil's treatment of Ms. Carlson and is, therefore, classic expert testimony. *See Dereak v. Don Mattox Trucking, LLC*, No. 06-3123, 2007 WL 3231417, at *5 (C.D. Ill. Oct. 30, 2007) ("[W]hen testimony goes beyond the scope of treatment and the observations of the treating physician, it constitutes expert testimony.")

It is true that Ms. Carlson did not submit an expert report from Dr. Trefil under Rule 26(a)(2)(B), but she did disclose him as an expert witness under Rule 26(a)(2)(A). In addition, Officer Bukovic has had an opportunity to depose Dr. Trefil and to test his dental credentials in order to prepare for trial. On these facts, the court will allow Dr. Trefil to testify generally that failing to wear dentures may cause teeth to shift enough that the dentures no longer fit. He may also testify that Ms. Carlson told him she had stopped wearing her dentures in January 2005 after her encounter with Officer Bukovic. Dr. Trefil may not, however, opine in any way that Ms. Carlson was unable to wear her dentures following the January 2005 incident, or that the dentures stopped fitting because of Officer Bukovic's actions.

## CONCLUSION

For the reasons stated here, Defendant's Motions *in Limine* [112] and Motion to Bar Expert Opinions [110] are both granted in part and denied in part.

ENTER:

Dated: May 4, 2009

*Nan R. Nolan*
NAN R. NOLAN

United States Magistrate Judge