UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUNE O. CARLSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 07 C 06 ) |
| SCOTT BUKOVIC and the CITY OF DARIEN, an Illinois Municipal Corporation, | ) Judge Nan R. Nolan ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff June O. Carlson has charged Officer Scott Bukovic with seizing her person and using excessive force against her in violation of 42 U.S.C. § 1983. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and are set to proceed to trial on June 15, 2009. In response to arguments made at a final pretrial conference on May 18, 2009, the court instructed the parties to submit additional briefs regarding the admissibility of certain exhibits.[1] The parties have also briefed Plaintiff's motion to reconsider section 2(c) of the court's ruling on her motions *in limine*. For the reasons set forth below, Defendant's objections to Plaintiff's trial exhibits are sustained in part and overruled in part, and the motion to reconsider is denied.

## DISCUSSION

### I. Plaintiff's Trial Exhibits

Plaintiff has submitted 42 exhibits she wishes to introduce at trial. Defendant objects that many of the exhibits are inadmissible on a variety of grounds. The court considers each objection in turn.

---

[1] Plaintiff is the only party that seeks to introduce exhibits in this case.

### A. Exhibit 4 - Excerpts from Defendant's Deposition

Plaintiff seeks to admit into evidence excerpts from the deposition of Officer Bukovic taken on December 18, 2007. Defendant has no objection to Plaintiff using the deposition transcript for purposes such as impeachment or refreshing the witness's recollection. Defendant argues, however, that the deposition transcript is not itself admissible at trial. Plaintiff disagrees, citing a 1969 decision from the Sixth Circuit Court of Appeals for the proposition that Federal Rule of Civil Procedure 32(a)(3) allows her to use Defendant's deposition transcript for "any proper purpose," including admission at trial. (Pl. Mem., at 1-2 (quoting *Pingatore v. Montgomery Ward & Co.*, 419 F.2d 1138 (6th Cir. 1969).)

"[A] deposition transcript usually is not admissible at trial." *IFC Credit Corp. v. Tissue Prods. Tech. Corp.*, No. 07 C 4351, 2009 WL 901009, at *1 (N.D. Ill. Mar. 31, 2009). Under Federal Rule of Evidence 801(d), however, the deposition of a party-opponent may be admissible at trial if the statements at issue constitute prior inconsistent statements or admissions. *See, e.g., Tome Engenharia E. Transportes, Ltda v. Malki*, No. 94 C 7427, 2003 WL 21372466, at *4 (N.D. Ill. June 12, 2003); *White v. Gerardot*, No. 1:05-cv-382, 2008 WL 4724000, at *4 (N.D. Ind. Oct. 24, 2008). During the trial, the parties may seek admission of portions of Officer Bukovic's deposition transcript consistent with FRE 801(d), but the transcript will not go to the jury room with the jury when they retire to deliberate on their verdict. *White*, 2008 WL 4724000, at *4.

### B. Exhibit 5 - Darien Police Department Offense Report

Exhibit 5 is the Offense Report involving the Wal-Mart incident at issue in this case. Plaintiff initially sought to introduce an unsigned, seven-page computer printout that contained no narrative of the events that occurred on January 3, 2005 (referred to herein as Exhibit 5(a)). In response to Defendant's objection, Plaintiff now seeks to introduce Exhibit 5(b), a four-page report written and signed by Officer Bukovic that sets forth his account of the relevant events, including actions he

took and conversations he had with witnesses. Defendant claims that this new exhibit is untimely and should not be admitted. In light of the fact that Defendant initially raised no objection to Exhibit 5(a) in the final pretrial order, however, the timeliness objection is not well-taken.

Plaintiff argues that Exhibit 5(b) is admissible under the business record exception to the hearsay rule pursuant to FRE 803(6). Defendant objects that "Plaintiff has not identified any witness who can lay a proper foundation" under FRE 803(6). (Def. Resp., at 3.) That rule, however, permits the authentication of a business record by any "qualified witness." FED. R. EVID. 803(6); *Thanongsinh v. Board of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006). In the court's view, Officer Bukovic is qualified to testify to the circumstances surrounding his preparation of the report, which may suffice to authenticate it as a business record. In addition, the report may constitute a public record under FRE 803(8). *See Truesdale v. Klich*, No. 03 C 8209, 2006 WL 1460043, at *3 (N.D. Ill. May 23, 2006) ("In a civil case, police reports may be admissible as a public record or business record.") The court thus reserves ruling on the admissibility of Exhibit 5(b) until trial. *See, e.g., Olech v. Village of Willowbrook*, No. 97 C 4935, 2002 WL 31317405, at *5 (N.D. Ill. Oct. 11, 2002)

This does not resolve Defendant's other objection that Exhibit 5(b) contains multiple levels of hearsay. FRE 801(d)(2) allows admission of a party's own statement when offered against that party. FED. R. EVID. 801(d)(2)(A); *Truesdale*, 2006 WL 1460043, at *3. This certainly covers Officer Bukovic's description of his own statements and actions. Plaintiff has not explained, however, how statements made to Officer Bukovic by third persons and recorded in his report qualify as "admissions" by Officer Bukovic. Any such hearsay statements contained within Exhibit 5(b) may be admitted to show what Officer Bukovic believed occurred on January 3, 2005, but they may not be offered for the truth of the matters asserted. FED. R. EVID. 801(C); *United States v. Burt*, 495 F.3d 733, 736 (7th Cir. 2007).

Defendant finally argues that hearsay issues aside, Exhibit 5(b) is not relevant to Plaintiff's excessive force claim and could mislead the jury because it is merely a summary of events. In Defendant's view, the jury "could be misled into believing that any facts or detailed descriptions of events were intentionally omitted from the report." (Def. Resp., at 3.) The court is satisfied that the report is relevant to assist the jury in understanding what occurred on January 3, 2005. Officer Bukovic will have every opportunity to explain the report and the information he included in it, which will prevent jury confusion.

### C. Exhibit 6 - Darien Police Department Resistance Response Report

Exhibit 6 is the Resistance Response Report completed by Officer Bukovic following the January 3, 2005 incident. Defendant objects that the report is not relevant because it does not establish whether Plaintiff was actually seized or injured during her encounter with Officer Bukovic. (Def. Mem., at 4.) Defendant also expresses concern that "[t]he jury may conclude that the completion of this report is an acknowledgment of a use of force." (*Id.*) Like Exhibit 5(b), Exhibit 6 is relevant to assist the jury in understanding what occurred on January 3, 2005. Officer Bukovic may explain his statements in the report and his basis for preparing it in order to prevent jury confusion. Defendant claims that Officer Bukovic cannot explain why he prepared the report without referring to the Darien Police Department's rules and regulations, which the court has deemed inadmissible. (*Id.*) This is inaccurate. The court barred only "evidence of alleged violations of Darien Police Department policies, rules or procedures," not mere references to them for other permissible purposes. *Carlson v. Bukovic*, No. 07 C 06, 2009 WL 1286004, at *5 (N.D. Ill. May 4, 2009).

Defendant next objects that Exhibit 6 is inadmissible hearsay, and that Plaintiff has not identified anyone qualified to testify that it is a business record under FRE 803(6). As with Exhibit 5(b), however, Officer Bukovic is qualified to testify to the circumstances surrounding his

4

preparation of the Resistance Response Report, which may suffice to authenticate it as a business or public record. The court thus reserves ruling on the admissibility of Exhibit 6 until trial. *Olech*, 2002 WL 31317405, at *5.

### D. Exhibit 8 - Hinsdale Hospital ER/Outpatient Registration

Exhibit 8 is a Hinsdale Hospital Emergency Room Registration Report. Defendant argues that the exhibit constitutes inadmissible hearsay, and that Plaintiff has not identified a witness who can lay a proper foundation for the report under FRE 803(6). (Def. Mem., at 4.) In light of Plaintiff's assertion that Dr. Kern will lay the necessary foundation, the court will reserve ruling on the admissibility of Exhibit 8 until trial. *Olech*, 2002 WL 31317405, at *5.

Citing FRE 411, Defendant also objects that the report contains multiple references to Plaintiff's insurance. The parties previously agreed that FRE 411 precludes any reference to the City of Darien's insurance. *Carlson*, 2009 WL 1286004, at *1. Defendant has not explained adequately how this rule also provides a basis for excluding evidence of Plaintiff's insurance, and the argument is rejected. That said, the following language found in the report on both the first and second pages must be redacted: "grabbed by police officer." Even if the report itself is admissible, this hearsay statement within the report is not relevant to Plaintiff's treatment or diagnosis and is, therefore, inadmissible. *See, e.g., Cook v. Hoppin*, 783 F.2d 684, 690 (7th Cir. 1986) ("By its own terms, Rule 803(4) does not exclude from the hearsay rule statements relating to fault which are not relevant to diagnosis or treatment."); *Carlson*, 2009 WL 1286004, at *6-8 (barring expert opinions from Plaintiff's treating physicians).

### E. Exhibits 9, 12, 13, 42 - Deposition Transcripts of Non-Party Witnesses

Exhibits 9, 12, 13 and 42 are deposition transcripts of certain non-party witnesses. During the final pretrial conference, the court sustained Defendant's objection to admission of the transcript of Dr. Brian Kern's deposition (Exhibit 9), and Plaintiff withdrew Dr. Lisa Fortman's

5

deposition transcript (Exhibit 42). Plaintiff offered no evidence at that time (or subsequently) that either physician is unavailable to testify at trial pursuant to Rule 32(a)(4). Plaintiff is therefore required to secure the witnesses' appearance in court. *IFC Credit Corp.*, 2009 WL 901009, at *1 ("[A] deposition transcript usually is not admissible at trial.") The court's rulings on Exhibits 9 and 42 stand and Defendant's renewed objections are denied as moot.

With respect to Dr. Gene Harvey, the parties agree that he is unavailable to testify at trial due to his health, and that the jury may be shown his videotaped deposition with appropriate redactions. FED. R. CIV. P. 32(a)(4)(C). The court has already ruled that the corresponding deposition transcript may not be admitted into evidence; that ruling stands.

### F.     Exhibits 10, 14, 16, 19, 20, 30 - Medical Records

Plaintiff seeks to introduce her medical records from Hinsdale Hospital (Exhibit 10); Dr. Gene Harvey (Exhibit 14); DuPage Imaging Center (Exhibit 16); Dr. Richard Bertenshaw (Exhibit 19); Dr. Robert Trefil (Exhibit 20); and Dr. Thomas Sullivan (Exhibit 30). Defendant does not object to the use of these records for purposes of impeachment or refreshing a witness's recollection, but he argues that the records should not be admitted as substantive evidence or go to the jury room during deliberations.

#### 1.     Exhibit 10

Plaintiff claims that Exhibit 10 is admissible with a proper foundation from Dr. Kern. Pages one through five of Exhibit 10 consist of handwritten notes on certain hospital charts. The court will allow Dr. Kern the opportunity to establish the admissibility of his own handwritten notes at trial. It appears, however, that the report contains handwritten entries from at least two other people, as well. Plaintiff has not explained how Dr. Kern is qualified to discuss or lay a foundation for any notes he did not personally write, but the court will reserve ruling on this issue until trial. *Traum v.*

*Equitable Life Assurance Society of U.S.*, 240 F. Supp. 2d 776, 781-82 (N.D. Ill. 2002) (medical reports from third-party doctors "must be adequately authenticated.")

Pages six through eight of Exhibit 10 consist of discharge instructions for Plaintiff. As with the handwritten notes, the court will allow Dr. Kern the opportunity to authenticate these pages and, thus, reserves ruling on their admissibility until trial. *Olech*, 2002 WL 31317405, at *5. The court does agree with Defendant, however, that all references to Plaintiff's blood pressure, which the court has already deemed inadmissible, must be redacted from this exhibit. *Carlson*, 2009 WL 1286004, at *2-3. This includes:

### Page 023

"Pt also continues to state that a BP of 148/88 is 'too high for me'" through "and she reiterated her concern about her blood pressure."

In addition, all statements that are not relevant to Plaintiff's treatment or diagnosis are inadmissible hearsay-within-hearsay and must be redacted. *See* FED. R. EVID. 803(4); *Cook*, 783 F.2d at 690; *Carlson*, 2009 WL 1286004, at *6-8. These include:

### Page 022

(1) "grabbed by police officer at Walmart"; (2) "nudged by police officer."

### Page 025

(1) "alleged assault victim"; (2) "grabbed on arms and twisted."

    **2.**    **Exhibit 14**

Exhibit 14 is a set of typewritten notes prepared by Dr. Harvey. Defendant objects that Plaintiff failed to lay a proper foundation for this exhibit during Dr. Harvey's deposition. It appears that Dr. Harvey referred to these notes throughout his deposition to refresh his recollection. (Harvey Dep., at 11 lines 16-17 ("And feel free to look at your records, if you need to.").) There is no evidence, however, that Dr. Harvey gave any direct testimony about the contents of his notes.

Absent such evidence, it is not clear how Plaintiff intends to secure admission of Exhibit 14 at trial. Nevertheless, the court will reserve ruling on this issue.

Defendant also objects that the records contain inadmissible causation and prognosis opinions, and references to Plaintiff's high blood pressure. The court agrees that all such statements must be redacted. *Carlson*, 2009 WL 1286004, at *2-3, 6-8. All hearsay statements not relevant to Plaintiff's treatment or diagnosis must be redacted as well. *Id.* at *6-8. The court has recreated a copy of Exhibit 14 and attached it to this opinion with portions requiring redaction highlighted in yellow. The court notes that its redactions include references to treatment by Dr. Bertenshaw, who will not be testifying at trial, and to Plaintiff's cataract surgery, which she has stipulated is unrelated to the incident with Officer Bukovic.

### 3. Exhibit 16

Defendant next objects that there is no foundation for Exhibit 16, which shows the results of a January 10, 2005 lumbar spine MRI at the DuPage Imaging Center. The report was apparently ordered by Dr. Harvey, and the court urges the parties to stipulate that it is what it purports to be for purposes of authentication. That said, Plaintiff will only be able to introduce Exhibit 16 by eliciting testimony from a witness qualified to discuss it. The court reserves ruling on the admissibility of Exhibit 16 until trial.

### 4. Exhibit 19

Exhibit 19 consists of typed and handwritten medical notes from Plaintiff's endocrinologist, Dr. Robert Bertenshaw. Dr. Bertenshaw will not be testifying in this case, and Plaintiff has not identified any other witness qualified to testify regarding the report's contents or authenticity. Indeed, the court understood at the final pretrial conference that Plaintiff was withdrawing this exhibit. (Tr. of 5/18/09, at 45.) The objection to Exhibit 19 is sustained.

### 5. Exhibit 20

Defendant objects to the admission of Dr. Trefil's medical records for a variety of reasons. First, Defendant notes that the records contain impermissible causation opinions, such as "she was involved in an incident that caused her to not wear her partials (trauma)." The court has already ruled that such opinions are inadmissible, and any such statements must be redacted. *Carlson*, 2009 WL 1286004, at *6-8.

Defendant also objects that the first page of Exhibit 20 appears to have been completed more than 10 years ago in July 1996. Unless Dr. Trefil testifies that page one was created closer to the time of the events in question, this page will not be admitted. Defendant finally objects that the records contain irrelevant information such as Plaintiff's payment history and "repairs to Carlson's teeth which have no bearing on the interaction with Officer Bukovic." (Def. Mem., at 9.) The court agrees that for purposes of liability, Plaintiff's payment history is not relevant and must be redacted. If the trial proceeds to the damages phase, Dr. Trefil will need to offer testimony regarding the handwritten payment amounts before that evidence will be admitted. As for the work Dr. Trefil performed on Plaintiff's teeth, the doctor may testify regarding the procedures he performed, but he may not opine as to why Ms. Carlson needed the repairs. It will be for the jury to determine whether the incident with Officer Bukovic led to the dental work at issue.

Finally, on the issue of foundation, the court will allow Dr. Trefil the opportunity to authenticate and/or otherwise establish the admissibility of Exhibit 20, which consists largely of his handwritten notes. Final ruling on the admissibility of this exhibit is reserved until trial. *Olech*, 2002 WL 31317405, at *5.

### 6. Exhibit 30

Exhibit 30 consists of medical records from Dr. Thomas Sullivan, a neurologist who conducted nerve testing on Plaintiff's hands. Like Dr. Bertenshaw, Dr. Sullivan has not been

identified as a testifying witness in this case, and Plaintiff has not proffered any other witness who may be qualified to discus or authenticate this exhibit. Absent such a witness, the objection is sustained.

### G. Exhibits 11, 15, 17, 18, 21, 22, 25-29 - Billing Statements and Insurance Records

Plaintiff seeks to introduce into evidence multiple medical billing statements and insurance records. Defendant claims that these exhibits constitute inadmissible hearsay, and that Plaintiff has not identified any witness competent to authenticate the records. Plaintiff acknowledges that "[s]ome courts . . . consider invoices to be hearsay," but argues that they should be admitted "in corroboration of Plaintiff's oral testimony of damages sustained." (Pl. Mem., at 2.) Plaintiff's only support for this position is a California state court case from 1968, *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 69 Cal. 2d 33, 42-43 (1968).

The court has reviewed the invoices and billing statements at issue and will reserve its ruling on their admissibility until trial, unless the parties stipulate that they are authentic business records. Of course, any such stipulation would not mean that Defendant agrees that Plaintiff in fact incurred these expenses as a result of Officer Bukovic's actions. The court also reserves ruling on Defendant's claim that Exhibits 27-29 are inadmissible because they relate to a separate and unrelated incident. The court will determine at trial whether the testimony and evidence presented suffice to allow the jury to consider injuries reflected in those exhibits.

### H. Exhibits 34 and 35 - Training Task #24 and #31

Exhibits 34 and 35 are Darien Police Department training outlines regarding crimes against property, and the service of warrants and summons, respectively. Defendant argues that these exhibits are irrelevant because there is no *Monell* claim in this case and, thus, the Darien Police Department policies, procedures and customs have no bearing on whether Officer Bukovic used excessive force against Plaintiff. Defendant also claims that the exhibit will lead to jury confusion

10

because (1) the court has already precluded evidence regarding the Illinois criminal trespass (or any other criminal) statute; (2) this case does not involve the service of a warrant or summons; and (3) the terms used in the outlines are not defined. FED. R. EVID. 403.; *Imtiazuddin v. North Ave. Auto, Inc.*, No. 04 C 286, 2004 WL 2418295, at *3 (N.D. Ill. Oct. 27, 2004) ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of . . . jury confusion.")

In response, Plaintiff notes her pending motion to reconsider and argues that if the court agrees with her position, the exhibits will be admissible. As explained below, the court does not agree with Plaintiff, and the objection to these exhibits is sustained.

### I. Exhibits 36-40 - Report of Domestic Battery and Non-Traffic Complaint and Arrest Tickets

Exhibit 36 is a Darien Police Department domestic battery report completed by Officer Bukovic in June 2004. Exhibits 37-40 are Non-Traffic Complaint and Arrest Tickets issued by Officer Bukovic in July and August 2004. The salient feature of all of these exhibits is that they have absolutely nothing whatsoever to do with Plaintiff or this lawsuit. Defendant's objections to the admission of these exhibits into evidence are sustained. *Imtiazuddin*, 2004 WL 2418295, at *3.

### J. Exhibit 41 - Motor Vehicle Purchase Documentation

Defendant finally objects to the admission of documentation evidencing Plaintiff's purchase of a car in August 2004. Defendant agrees that Plaintiff may testify regarding her driving habits but insists that the purchase document is not relevant on this issue. Plaintiff responds that the document is "circumstantial evidence of the effect of the use of force on her person by the Defendant." (Pl. Resp., at 4.)

Plaintiff is free to testify that she purchased and drove a new car in August 2004, and that she was no longer able to drive it after the incident with Officer Bukovic. The court sees no basis

11

for admitting the purchase document into evidence unless Defendant disputes that the purchase occurred. The court recommends a stipulation on this issue.

## II. Motion to Reconsider

### A. Criminal Trespass Statute

Plaintiff has asked the court to reconsider section 2(c) of its ruling on Defendant's motions *in limine*. In that section, the court held that Plaintiff "may not argue that she was legally entitled to remain at Wal-Mart after being asked to leave" or "make any reference to the criminal trespass (or any other criminal) statute, or argue generally that she was not committing a crime." *Carlson*, 2009 WL 1286004, at *4. Plaintiff contends that this is improper because, as a matter of law, she was not committing a criminal trespass under the relevant Illinois statute. The court once again disagrees.

Under Illinois law, a criminal trespass occurs when a person, among other things, (1) "knowingly and without lawful authority enters or remains within or on a building;" or . . . (3) "remains upon the land of another, after receiving notice from the owner or occupant to depart." 720 ILCS 5/21-3(a)(1) and (3). For purposes of subsection (a)(1), there is no criminal trespass where a person is "in a building which is open to the public while the building is open to the public during its normal hours of operation." As noted in the earlier decision, Plaintiff has insisted that she was on Wal-Mart's premises lawfully under subsection (a)(1) and, thus, Officer Bukovic had no authority to try and physically escort her from the premises. Officer Bukovic, however, focuses on subsection (a)(3), which governs a person's right to remain on land after being asked by the owner to leave. Plaintiff claims that a Wal-Mart "building" is not "land" under this subsection and, thus, she was not committing a criminal trespass as a matter of law.

A federal court reviewing a state statute "must follow the state's highest court's interpretation of its own state law." *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d

12

570, 576 (7th Cir. 2001). *See also Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir. 1998) ("Federal courts must interpret a state statute as that state's courts would construe it.") No Illinois court has addressed directly whether "land" includes buildings for purposes of 720 ILCS 5/21-3(a)(3). Thus, the court must determine how Illinois courts address a statutory interpretation issue of first impression. *Brownsburg Area Patrons Affecting Change*, 137 F.3d at 508.

In Illinois, the "primary goal when interpreting the language of a statute is to ascertain and give effect to the intent of the legislature." *Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund*, 216 Ill. 2d 590, 595, 837 N.E.2d 876, 879 (2005). "Legislative intent is best derived from the language of the statute itself, which, if unambiguous, should be enforced as written." *Id.* "If the statutory language is susceptible to more than one interpretation, however, legislative intent may be ascertained by considering 'the entire act, its nature, its object, and the consequences resulting from different constructions.'" *Id.* at 595-96, 837 N.E.2d at 879 (quoting *Shields v. Judges' Retirement Sys. of Illinois*, 204 Ill. 2d 488, 494, 791 N.E.2d 516, 519 (2003)). Where, as here, "a federal court must make predictions about how the highest state court would decide a case in the absence of caselaw directly on point," the court "must be careful to avoid the temptation to impose upon a state what it, or other jurisdictions, might consider to be wise policy." *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1093 (7th Cir. 1999). The court must also "endeavor to reach as narrow a holding as possible." *Rutledge v. Scott Chotin, Inc.*, 972 F.2d 820, 824 (7th Cir. 1992) (quoting *Taylor v. Raymond Corp.*, 909 F.2d 225, 227 (7th Cir. 1990)).

In her motion to reconsider, Plaintiff stresses the following definition of "land" as found in the criminal trespass statute:

> "Land" includes, but is not limited to land used for crop land, fallow land, orchard, pasture, feed lot, timber land, prairie land, mine spoil preserves and registered areas. "Land" does not include driveways or private roadways upon which the owner allows the public to drive.

720 ILCS 5/21-3. In Plaintiff's view, this language makes it "obvious and *a fortiori* the case that 'land' cannot include 'buildings.'" (Pl. Motion, at 2.) The problem with this argument is that the definition of "land" in the statute applies only to subsection (h), which governs liability for damages caused to land that a person has "entered upon with a motor vehicle." 720 ILCS 5/21-3(h) (introducing definition of "land" with "For the purposes of this subsection (h):") Neither subsection (h) nor the corresponding definition of "land" has any bearing on this case.

Aside from this inapplicable language, Plaintiff has cited no authority for the proposition that a Wal-Mart "building" is not "land" under subsection (a)(3). Plaintiff also overlooks an important distinction between subsection (a)(1) and (a)(3), namely, (a)(3) addresses the situation where a person is given notice to depart, as occurred in this case. Even under the prior version of the statute, which did not include an exception for knowingly entering or remaining within a public building, courts recognized that the statute

> delineate[d] and prohibit[ed] two distinct kinds of conduct: "The first is entry upon land without notice that such entry is prohibited; the second is remaining upon land after notice is given to depart, without regard to the lawfulness of the initial entry."

*People v. Mortenson*, 178 Ill. App. 3d 871, 874, 533 N.E.2d 1134, 1136 (2d Dist. 1989). The "land" at issue in *Mortenson* was a movie theater. In *Wilson v. Jackson*, 312 Ill. App. 3d 1156, 728 N.E.2d 832 (3d Dist. 2000), a case decided after the statute was amended, the court invoked the "notice to depart" language of subsection (a)(3) in connection with a person who refused to leave another's home. *Id.* at 1167, 728 N.E.2d at 841.

In the court's view, the term "land" encompasses buildings for purposes of section (a)(3) of the Illinois criminal trespass statute. Plaintiff has not provided any contrary authority suggesting that a person who is repeatedly asked to leave a privately-owned building, even one that is open to the public, cannot be charged with criminal trespass. Plaintiff's motion to reconsider the court's ruling prohibiting her from mentioning the Illinois criminal trespass (or any other criminal) statute, or from arguing generally that she was not committing a crime, is denied.

### B.     Reasonableness

In a related argument, Plaintiff objects to the court's framework for determining whether Defendant committed an unreasonable seizure of her person in this case. Plaintiff claims that if a seizure occurred, the next question is whether that seizure was *per se* unreasonable. Turning again to the Illinois criminal trespass statute, Plaintiff argues that her presence on the Wal-Mart premises was "protected against law enforcement abridgement" because, as a matter of law, she was not committing any crime. (Pl. Mem., at 2.) According to Plaintiff, because she had every right to remain in the store even after repeatedly being asked to leave, Officer Bukovic had no probable cause to arrest her or to use any force against her person. (Pl. Mem., at 11.)

As explained earlier, the court disagrees with Plaintiff's interpretation of the criminal trespass statute. Plaintiff concedes that she was asked to leave the Wal-Mart store and that she refused to do so. Plaintiff has no persuasive authority demonstrating that this conduct was not in violation of section (a)(3) of the trespass statute. Thus, Officer Bukovic had both probable cause to arrest her and a reasonable suspicion that she was committing a crime. If the jury concludes that Officer Bukovic seized Plaintiff, the only additional question is whether that seizure was reasonable under the circumstances. *See Marion v. City of Corydon, Indiana*, 559 F.3d 700, 705 (7th Cir. 2009) ("Whether the force used to effect a seizure is excessive depends on the totality of the circumstances under an objective reasonableness standard.")

### CONCLUSION

For the reasons stated here, Defendant's objections to Plaintiff's trial exhibits are sustained in part and overruled in part. The parties will submit to chambers by June 10, 2009 two tabbed, redacted copies of the proposed exhibits. Plaintiff's Motion to Reconsider [126] is denied in its entirety.

Dated: June 4, 2009

ENTER:

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge

CARLSON, JUNE

<u>OUT OF ORDER</u>

| | |
|---|---|
| 1/6/05<br>GH | BP 120/82<br>Discussion of events that occurred in a Wal Mart store on Tuesday prior to this appt. She was there with son when he injured his arm. Got into a discussion with the store personnel. He was injured on alarm box that was broken and out of position. The discussion was persistent enough that the police were called. States that she was grabbed by the police, injured her arms. Threatened with handcuffs, but not actually cuffed, but the police kicked her behind the legs to subdue her and injured her L. leg and L. posterior knee area. She has had back pain and pain referred down the L. leg since then; especially into the hip. Difficulty walking, walks with a limp. Went to ER and was evaluated, but not X-rayed. Has some swelling and contusion of her elbows, R. And L. R. greater than L. There is minimal ecchymosis at the present time, tender to palpation. C/O of pain in her R. neck and pain in L. flank. Some of the distribution of the pain is compatible with sciatic into the L. hip and leg. Will get X-rays of the lumbosacral spine to evaluate. Her other concern is her HTN. Low here tonight. She says it was elevated at the time of the confrontation and made her apprehensive about possible stroke. Current injuries should fully resolve in time. Will see if there any changes in the lower spine area. |
| 1/17/05 | (PHONE) Advised of results of her X-rays, lumbar spine shows degenerative GH hypertrophic changes; raises possibility as to some spinal stenosis. States she had none of her sxs prior to events at the Wal Mart Store and that she still has significant disability. She will work with time and use local topical arthritic type craems. Tylenol, intermittent heat and cold packs. If the sxs into her leg and limitations ambulating persist will need to consider MRI to evaluate for spinal stenosis. Appears quite likely that the situation aggravated pre-existing arthritis and produced sxs that were not existent before. Still c/o of her arms in the areas where she had bruising. |
| 3/7/05<br>GH | Wt. 154#   BP 110/74   T. 98.7<br>F/U on her prior injuries. Still has multiple complaints. Especially the knee. Still has some enlarged look to it, very tender to palpation. R. knee to a lesser degree is similar. Will xray both knees. She ahs trouble with steps and getting in and out of car. Arms are still rather puffy, especially the R. arm at the elbow, but no bruising. Swelling is definitely decreased from prior exam. She has trouble sleeping. Decreased appetite and some nightmares. Her BP is down nicely. Given refill on her <u>Tenoretic</u> 50 mg #30 1 daily 5/rfs. She has had recent cataract surgery with Dr. Brian Smith and plans to have the other eye done soon. Still sees Dr. Bertenshaw for thyroid. Takes <u>Levoxyl</u>. Heart is sinus. Lungs are clear. Advised that most of these injury problems will just take time to resolve. |
| 3/15/05<br>GH | (PHONE) Pt advised of results on her knee X-rays - there are arthritic changes and calcifications. She is having considerable pain, said she is unable to drive her car, difficulty walking. Again, most likely due to aggravation of pre-existing arthritis. It was not giving her trouble until it was injured. |

4/25/05        Wt. 155#    BP 120/70
GH

F/U on trauma from episode at Wal Mart. Swelling is down. Bruising is clearing. Has some thickening in the elbow areas, both knees are still sore. Remains limited with her walking. Encouraged to keep working on exercise and walking to strengthen and improve the situation. Her knee X-rays showed arthritis and calcifications which apparently were aggravated by the trauma. No palpable effusion in her knees. Can expect this to take some time to slowly resolve. Stays on her Levoxyl from Dr. Bertenshaw for hypothyroidism. Had her second cataract done by Dr. Smith and this is doing very nicely. Heart is sinus. Lungs are clear. BP stable. She had some difficulty taking Tenoretic. Is off of this now. Will monitor pressure.