# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

| | |
|---|---|
| JUNE O. CARLSON | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 07 C 0006 |
| | ) |
| SCOTT BUKOVIC, and the CITY OF DARIEN, an | ) Magistrate Judge Nolan |
| Illinois Municipal Corporation, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT SCOTT BUKOVIC'S MOTION FOR
## JUDGMENT AS A MATTER OF LAW

NOW COME Defendants, SCOTT BUKOVIC, by and through his attorney, Laura L. Scarry of DeANO & SCARRY, and pursuant to Federal Rule of Civil Procedure 50, and hereby submits his motion for judgment as a matter of law, as follows:

## LEGAL STANDARD

A judgment as a matter of law should be granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a). "[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.' " Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 149 (2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. NLFC, Inc. v. Devcom Mid-Am., Inc., 45 F.3d 231, 234 (7th Cir.1995); Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir.1994); Beraha v. Baxter Health Care Corp., 956 F.2d

1436, 1440 (7th Cir.1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead it must ask whether any reasonable jury could find in favor of the Plaintiff. Appelbaum v. Milwaukee Metropolitan Sewerage Dist., 340 F.3d 573, 578-579 (7th Cir.2003).

## ARGUMENT

I.      **OFFICER BUKOVIC IS ENTITLED TO DIRECTED VERDICT BECAUSE HIS ATTEMPT TO PHYSICALLY DIRECT PLAINTIFF OUT OF THE STORE DID NOT VIOLATE THE FOURTH AMENDMENT**

Plaintiff complains in this case that the Officer Bukovic used excessive course in attempting to escort her from the Wal-Mart store after management asked her to leave.  The first issue to be addressed is not the degree of force that Officer Bukovic used but whether his actions constituted a seizure. If so, then his use of force is analyzed under the Fourth Amendment standard of objective reasonableness. See, Graham v. Connor, 490 U.S. 386, 388 (1989); Acevedo v. Canterbury, 457 F.3d 721, 724 (7th Cir. 2006). If not, then Officer Bukovic's use of force is governed by the Fourteenth Amendment's substantive due process clause.  This court has previously ruled, as a matter of law, that Carlson cannot satisfy the Fourteenth Amendment's "shocks the conscience" standard.  As a result, if the Plaintiff cannot establish both that she was seized, and that the means by which the seizure was accomplished was excessive, Officer Bukovic is entitled to judgment in his favor as a matter of law.

A.      **Officer Bukovic's Physical Hold of Plaintiff in an Attempt to Get Her to Leave the Store did not Implicate the Fourth Amendment**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const., Amend. IV. To state a claim under the Fourth Amendment, a plaintiff must show both that a "seizure" occurred. Brower v. County of Inyo, 489 U.S. 593, 599 (1989).

Under the Supreme Court's definition in <u>Terry v. Ohio</u>, 392 U.S. 1, 19 n.16 (1968), a seizure occurs when an officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." <u>Id.</u> However, in that same case and in later cases, the Court also described this restraint as an infringement on a person's freedom "to walk away." <u>Id.</u> at 16; <u>Tennessee v. Garner</u>, 471 U.S. 1, 7 (1986); <u>see also</u>, <u>INS v. Delgado</u>, 466 U.S. 210, 215 (1984) (declaring that seizures extend to brief detentions short of traditional arrest if "'a reasonable person would have believed that he was not free to leave'") (quoting <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980)).

Additionally, in <u>United States v. Mendenhall</u>, 446 U.S. 544 (1980), Justice Stewart asserted:

> We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. . . . In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Id.* (Justice Stewart, joined by Justice Renquist).

Furthermore, when a person might not want to leave an encounter for reasons unrelated to the presence of police, the Supreme Court noted that the proper way to conduct the <u>Mendenhall</u> inquiry is to ask whether "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." <u>Brendlin v. California</u>, ___ U.S. ___, 127 S.Ct. 2400, 2405-06 (2007) (quoting <u>Florida v. Bostick</u>, 501 U.S. 429, 435-36 (1991)). Put differently,

"the crucial test is whether ... the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Bostick, 501 U.S. at 437 (quotations omitted). Under this inquiry, a person is seized when a reasonable person in his shoes would conclude from the officer's conduct that "his attempt to leave the scene" would be "likely to prompt an objection from the officer ...." Brendlin, 127 S.Ct. at 2407.

This "seizure" inquiry is an objective test. It does not turn on the subjective belief of the defendant, nor on the subjective intentions of the officer. See, California v. Hodari D., 499 U.S. 621, 628 (1991) (holding that the standard "is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person.").

In this case, even taking the facts in the light most favorable to June, a reasonable person would have felt free to terminate the encounter with Officer Bukovic. The facts are clear that June remained free to walk away from the encounter at any time, and a reasonable person would have known so. Officer Bukovic undisputedly asked June to leave the store. It is also undisputed that June refused to leave. It wasn't until after June refused to leave the store that Officer Bukovic took ahold of June's right arm with both of his hands in an effort to coax her out of the store.

The Supreme Court has observed that the "word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." Hodari D., 499 U.S. at 626; see, id. ("An arrest requires . . . physical force. . . ."). However, the Court has also stated that not every touch by a police officer of a private citizen constitutes a seizure. When a person is merely tapped on the shoulder by law

enforcement agents attempting to get that person's attention, no seizure occurs. <u>See</u>, <u>Delgado</u>, 466 U.S. at 220-21. <u>See</u> <u>also</u>, <u>Martinez v. Nygaard</u>, 831 F.2d 822, 826-27 (9th Cir. 1987) (holding that man was not seized when officers grabbed him "to get his attention" and then released him). This observation is consistent with the Court's assertion that a seizure is a "governmental *termination of freedom of movement.*" <u>Brower</u>, 489 U.S. at 597 (emphasis added). Here, Officer Bukovic sought to convince June to *leave* the store, not to terminate her freedom of movement. A reasonable person would not feel as if their freedom of movement was restricted. To the contrary, a reasonable person would feel that Officer Bukovic was actively encouraging Carlson to exercise her freedom of movement. No reasonable jury could find that Bukovic restricted her freedom of movement in violation of the Fourth Amendment.

The undisputed facts in this case indicate that June was never seized within the meaning of the Fourth Amendment. There is no testimony that June was not free to walk away from and ignore Officer Bukovic. In fact, the undisputed evidence establishes that Bukovic specifically wanted and encouraged Carlson to walk away from him, and a reasonable person would have understood this. There has been no evidence suggesting that Officer Bukovic told June that she could not leave or that he prevented her from leaving. Wal-Mart personnel requested that June leave the store. Officer Bukovic also requested, more than once, that she leave. He also warned June, obviously in an effort to convince her to leave, that if she refused to leave, she could be arrested for criminal trespass. Indeed, even June knew that Officer Bukovic did not want her to remain in the store. June testified that she knew Officer Bukovic wanted her to leave. She further testified that Officer Bukovic did nothing to keep her at the scene, and that she was free to leave at any time. Based on the testimony, a reasonable jury could not conclude that an attempt by June to leave the scene would have prompted an objection by Officer Bukovic.

In McCoy v. Harrison, 341 F.3d 600, 606 (7th Cir. 2003), the Seventh Circuit Court of Appeals held that a state animal welfare investigator did not seize a homeowner when he struck her in the face after she slammed shut a kennel gate that he was attempting to open. The blow knocked her to the ground. Id. at 603. When she looked up, the investigator was hovering over her, his hand clenching and digging into her right arm. Id. He then let go and walked away. Id. The decision in McCoy turned largely on the absence of evidence showing that the investigator "intended to or did not acquire physical control over her person." Id. at 606. See also, Acevedo, 457 F.3d at 725 (distinguishing the facts presented in McCoy in determining whether plaintiff had been seized when he suffered a blow to the head knocking him unconscious); McKeown v. Hairston, No. 05-73244, 2007 WL 1768767 at *2 (E.D.Mich. June 15, 2007) (notwithstanding fact that officer had deliberate contact with the plaintiff, contact was not intended to restrain plaintiff's freedom of movement).

Like McCoy and McKeown, Officer Bukovic's physical contact with June was not intended to restrain her movement. Plaintiff's evidence has failed to establish that a reasonable person would feel as if Officer Bukovic acquired physical control over her. As such, June was not "seized" within the meaning of the Fourth Amendment. Therefore, judgment should be entered on Plaintiff's Fourth Amendment claim in favor of Officer Bukovic.

> **B.    Officer Bukovic's Touching of June Carlson Was Not Excessive as a Matter of Law**

Carlson maintains that Officer Bukovic used excessive force against her when he made physical contact with her by touching her arm in an attempt to coax her out of Wal-Mart. In cases involving arrest or other "seizure" of a citizen, the "objective reasonableness" standard of the Fourth Amendment applies. Wilson v. Williams, 83 F.3d 870, 874 (7th Cir.1996), citing Graham v. Connor, 490 U.S. 386, 395 (1989). To decide whether the amount of force used was

excessive, the court must "examine the totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government interests at stake." Jacobs v. City of Chicago, 215 F.3d 758, 773 (7th Cir.2000). The Fourth Amendment test is an objective one, where the officer's subjective intentions are irrelevant. Instead, courts consider factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Courts also consider whether the citizen was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties. Id. In the end, the excessive force inquiry "looks to whether the force used to seize the suspect was excessive in relation to the danger he posed--to the community or to the arresting officers--if left unattended." Id. (citations omitted). The Supreme Court has emphasized that "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." Id. at 396.

In this case, Officer Bukovic used a reasonable amount of physical contact with Carlson to coax her from the store. He made contact with her simply to escort her from the store. She then began to flail, and Officer Bukovic grabbed her arms to prevent her from striking him. Under the circumstances, he acted reasonably and with minimal force, and he is entitled to judgment in his favor as a matter of law.

## II. OFFICER BUKOVIC IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE LAW WAS NOT CLEARLY ESTABLISHED THAT NO FORCE COULD BE USED TO ESCORT A DISRUPTIVE CUSTOMER OUT OF A BUSINESS

Alternatively, even if Officer Bukovic had violated June's constitutional rights, Officer Bukovic is entitled to qualified immunity. Officer Bukovic is entitled to qualified immunity

because the law was not sufficiently clear that no physical contact or force could be used to escort a disruptive customer out of a business.

Qualified immunity shields a public official from civil liability if it can be demonstrated that he was performing a discretionary function and that a reasonable law enforcement officer would have believed that, at the time he acted, his actions were within the bounds of the law. See, Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court reaffirmed this basic principle and gave additional guidance as to its implementation.   If the law did not put the officer on notice that his conduct would be clearly unlawful, the officer's conduct is immunized from liability and dismissal is appropriate.  Id. at 202.

Saucier contains a two-part inquiry for addressing qualified immunity claims. First, the record must be examined to determine whether the facts, taken in the light most favorable to the plaintiffs, show that the defendant violated a constitutional right. Id. at 201. If such a constitutional violation is established, then a determination should be made into whether the constitutional right was clearly established at the time in question. Id. In other words, qualified immunity protects an official from suit and from liability for civil damages when, at the time of the challenged action, the contours of the constitutional right were not so defined as to put the official on notice that his conduct violated the Constitution. Qualified immunity is intended to shield from civil liability "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

With respect to the first part of the inquiry, June has failed to establish that her Fourth Amendment rights were violated. See, I.A. and I.B., *supra*. Alternatively, assuming, *arguendo*, that June has demonstrated a violation of her Fourth Amendment rights, Officer Bukovic is

nonetheless entitled to qualified immunity because the right to be free from force while being removed from a store was not clearly established at the time of the incident.

To be "clearly established," the right in question must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Miller v. Jones, 444 F.3d 929, 934 (7th Cir. 2006) (citation omitted). The actions unlawfulness must be "apparent" from preexisting law. Id.

At the time of the incident, it was not clearly established that an officer could not make minimal physical contact with a subject who refused to leave a store after being asked repeatedly to do so.  It was not clearly established that an officer's use of physical, non-threatening contact to coax a subject from the spot in which she is standing would constitute a seizure.  In the absence of any such authority, Officer Bukovic is entitled to qualified immunity and judgment should be entered in his favor. .

Respectfully submitted,

SCOTT BUKOVIC and CITY OF DARIEN


_____s/Laura L. Scarry_____
By: One of Defendants' Attorneys

Laura L. Scarry #6231266
DeANO & SCARRY
53 W. Jackson Blvd.
Suite 1062
Chicago, IL 60604
Tel: (630) 690-2800
Fax: (312) 564-4125